Case number 4. The motion that you enlarged with the court yesterday is denied. You have some time to decide how you wish to proceed or what you might want to say to the court before your argument comes up, but I thought I'd let you know now if you want to take that time to do so or to consider that. But your motion is denied. Mr. Morris, you may step forward to case number 1. Thank you, Your Honor. May it please the court, I'm John Morris, counsel for Marie McCray, the appellant in this case. We were last before the court back in December 2013 in this same case on a motion to dismiss and that we're back again. And obviously we survived the denial of that motion in the district court and we survived our effort here. To demonstrate that instance, the question was whether or not the claims that are brought in this case were subject to legislative immunity. And this Court held in that case that because the allegations of the complaint contended that there were actions beyond a mere decision to make a budgetary cut that implicated issues of Title VII, the case could not be dismissed and this Court remanded that case to the district court. And as it viewed the case, I think the way the Court viewed the case I think is useful to repeat for the Court again, that this Court acknowledged that the basis of McCray's lawsuit is not the financial storm that rocked the State and forced Maryland's government to scale back its budget. Rather, her claim is that the MTA and MDOT gave her a lightning rod to hold and sent her to the roof. Now, the case was remanded with the idea, as expressed in the Court's opinion, that the parties would proceed to explore discovery, to explore the motives of the actors in that case. We never got that far. A few things happened when we got back to the district court. First, Plaintiff amended the complaint to address the decision that this Court made that Ms. McCray's discrimination, her handicap or disability discrimination claims were subject to sovereign immunity. She amended the case, her claim rather, to include a claim under Section 504 of the Rehabilitation Act of 1973, to amend her ADA claim to state it under Title II of the ADA, and she raised a claim under State law under the Maryland Fair Employment Practice Act, which expressly makes it not subject to sovereign immunity under that point. Now, counsel, can you identify for us what are the discrete acts of discrimination that you say occurred here, and when did they occur? The discrete acts of discrimination are, in some respects, laid out in the Court's earlier opinion, that in January of 2008, a decision was made to lessen Ms. McCray's duties, to remove her from the position she was in, and based upon the Court's reading of the allegations, to render her vulnerable to a budgetary cut. That, in the Court's colorful language, was the effective equivalent of giving her the lightning rod and sending her to the roof. The lightning had not yet struck. So at that point, Ms. McCray was not aware of what she was in for until the lightning, in fact, did strike. Well, if that's a discrete act of discrimination, we'll assume that it is, and it's sufficient so that in the first McCray case, you survived the motion to dismiss because it was an actionable event, separate and apart from whatever the legislative immunity covered when she was actually terminated. So if that event occurred, when were you required to file your EEOC charge? I think there's a problem with the assertion, and if I could make that up. That's not an assertion. I'm just asking you a question. I'm just saying I thought the question was assuming that the actual event was that, and I'm saying that's the actual event, in that it's only made actionable when an adverse consequence is associated with it that's causally related. And in January 2008, the mere change involved no adverse effect, adverse employment impact. That impact was only potential. It did not become actual until October 2008 when the budget cut hit. And the contention as expressed in the Court's very colorful language ultimately is that Ms. McCray got hit by the lightning. The lightning was potential in January. It became actual in October. But if the action was sufficient so that it established a cause of action separate and apart from termination by legislative immunity, wouldn't it have to have been actionable at that time? Well, it's at that point that I'm going to take a little issue with at least the reasoning in the earlier decision. I don't think it was actionable in 2008. There are numerous decisions of this Court and other circuits that the mere inconvenience, a mere trivial event that does not significantly change or alter in itself the employment conditions can be actionable. So what we have is in the unusual circumstances presented here, an action where the ultimate discriminatory acts and the consequential adverse employment impact are separated. That the employment, the actual discriminatory acts occur in January 2008 and the contention is as embodied in the Court's characterization that they were adopted, those actions were adopted anticipating an event to occur later on. So your theory, your position is that if she was never laid off, fired, or terminated, she would have never had an action on Title VII? Well, my, yes, that is correct. Because there was no adverse employment action associated with her removal or the lessening of her work. So you don't make any claim of harassment or hostile work environment at all. Your whole claim is that this was sort of inchoate, if you will, seething there, setting her up for the lightning rod event. That's correct, Your Honor. Right, but if the lightning rod event had never occurred, she never had an action. She could not complete the action. So therefore, your view is that you're timely because it did not ripen into a claim until she was terminated. That's our position on that point. And you say she was laid off on October 15, 2008. That's correct. That's the date? That's the date she was laid off. And you filed a charge of discrimination on June 29, 2009. Actually, she went to the EEOC shortly thereafter in October 2008. She only raised discrimination. Subsequently, she amended her complaint to raise, she only raised disability discrimination. She subsequently went back and amended her complaint to raise race and gender discrimination. No, but on June 29, 2009, there's a charge of discrimination with the EEOC. And she says she was laid off on account of age. And disability. She raises that as well. Well, it says age. It's checked. On page 50 of the, this is something that I'm, on the JA at page 50, where you, and you check the box. And all of them are blank except age. She clarified. That was June 29, 2009. She claimed age discrimination to the EEOC. Now, later on, in 2010, she filed another one that said that she checked race, retaliation, sex, age, and disability. That was September 20, 2010. That was 15 months later. But the first one that I find here is a June, unless you want me to something earlier. No. June 29, 2009. My point is, my understanding of the facts is that she went to the EEOC. That's when the charge ultimately was processed. She had. There was a charge of age discrimination. I think you're right, Your Honor. Is there something other than what's in page 50? No, you're looking at it correctly. You're looking at it correctly. And I apologize. The other one's on page 51, but they're right there together. Yes. In the JA. You're correct. You're looking at the document. There are three cases that are, actually four cases that are assembled, and I conflated the facts of the case. And it gives the dates of the discrimination as 10-15-08. That's correct. Earliest, or 10-18-08, three days later, at the latest. So it was in a three-day window in October of 08. And she's complaining. But how then does that first claim pull through the race and sex claims that weren't specified on paper until 15 months after that? The thrust of what she's complaining about is the completed act. In other words, how do you get to exhaustion? I'm about that. Yeah. Which is the question. I think the question is addressed by what's the scope of the fair scope of the investigation, and does that scope of that investigation, when she goes to the EEOC and says, this is what happened to me, there was discrimination, and what triggered her moving was the event in October. When she describes the event in October, the question, I think, legally that gets you back to January is, how did this happen? The obvious fact that was presented and certainly was not unreasonable in this court in 2014 was, this is connected to the event that occurred in January 2008. That the question here, I think, given the nature of the kind of action we're talking about, is whether or not that prior action is properly within the scope of a fair investigation. The reality is the point of the exhaustion requirement is to put the employer on notice of what the claim is, and the standard that's offered in this court's authority is that the standard of reasonable investigation does that. In fact, here, the employer was aware of all the claims and all the facts that were investigated. So our position is, this is an issue that I think we can deal with this metaphysical problem of how do you acknowledge a And I think that the How was the employer on notice as to the race, sex, and disability claims before September of 2010? Well, the employer was not on notice. The employer was on notice when that was made, and here's the question. Ms. McRae was not on notice that she had been discriminated for race until thereafter, as her complaint makes out, that her discovery, her affidavit makes out, that she became introduced to a number of other women who were also laid off at the same time, African-American women, and it's on the basis of her interaction with them that she concluded that their situation was similar to hers. They raised race, she raised race, and within a timely period of her discovery of that, she went to the EOC. You're referring to her declaration, her affidavit, where she expanded on all this, but that was in 2014. The declaration was in 2014, but it's concerning what happened in early 2010, which led to her to go back and amend her charge of discrimination in 2010. So what you basically have is her proceeding in 2009 with a charge of discrimination on the basis of what she knew at the time. What she knew at the time is that she had been, she had lost her job. What she knew at the time was she thought she was being discriminated against, she says, on the basis of age and that piece. I believe if there should also be a, there may also be an intake questionnaire that suggests she was there earlier, and that's when the charge was ultimately prepared and signed by her. But after that initial charge was submitted, she encountered another group of women whose circumstances were similar, who basically had found themselves laid off in 2008, and again in 2011. They shared circumstances on the basis of that interaction that she had reason to believe that the basis of discrimination, in addition to what she noted in 2009, included race and gender. So you're saying the facts didn't expand. It's just the information as to motive. The information as to motive expanded. And she addressed those, what she knew in the 2009, rather, charge of discrimination. And the authority, at least there's suggestion in the authority of the Supreme Court in the Morgan case, through Judge Justice, I believe, O'Connor's dissent, that the issue of, I think going back to Ricks and Judge O'Connor's dissents, that the issue of the application of the discovery rule ought to be applied in the context of when the clock starts to run for a Title VII grievance. And what I am arguing is that the discovery rule ought to apply here. And as far as Ms. McCrae is concerned, what she knew as to what the motive was did not arise until her interaction with Ms. McCleary Evans and the other women that Ms. McCleary Evans introduced her to. Now, putting those... Mr. Morris, your light is red. Do you want to... You have time reserved. Do you want to eat into that? No. Let me come back and talk to you after you've heard from the employer. All right. Thank you. Thank you, Judge Gregg. All right. Ms. Katz? Thank you, Your Honor. May it please the Court. The district court properly dismissed Ms. McCrae's Title VII claims arising out of the transfer of her job duties in January 2008 because Ms. McCrae failed to exhaust her administrative remedies with regard to those claims. Counsel, let me ask you a preliminary question I meant to ask opposing counsel, and maybe you can answer it, maybe he can. I'm sure there must be a simple answer. As I understand it, the plaintiff's position is that the last day that an event occurred that led to an actionable act of discrimination would have been either October the 15th of 2008 or October 30, 2008. And the charge was filed June the 29th of 2009, which appears to be more than 180 days after that event. I don't see that you've raised that as a bar to this claim. We didn't raise that as a bar to this claim with the motion to dismiss stage because Ms. McCrae had signed an intake questionnaire in April of that year, and this Court has not clearly held one way or the other whether an intake questionnaire is always sufficient. It can be sufficient if it gives proper notice to the employer. We thought there may be some discoverable issues there as to whether that April 2009. That is not a defense that you raised. That's not a defense that we raised. So you give her or credit her for that 2009. We did at this stage of the proceedings, Your Honor. But in the context of the exhaustion issue, you give her that. Well, the exhaustion issue is, we raised an exhaustion issue as to what were the issues within the scope of her charge that she could then bring in a civil lawsuit. That would be the jurisdictional bar. As to the time bar with the exhaustion issues, we raised that she had not raised any claim with regard to the January 2008 transfer of her duties within either 180 or 300 days of filing her charge. So that was the timing issue that we raised. After remand from this Court, the issues in the district court were, as counsel discussed, they amended the complaint to include more allegations about the January 2008 transfer. The problem with that is that she never exhausted her administrative remedies with regard to that claim. It's not in either her initial or her amended charge of discrimination. She didn't exhaust with respect to which claim now? The transfer of her duties in January 2008. So Ms. McRae now claims that that was not an adverse action because even though her job duties had been reassigned, leaving her with nothing to do, she continued to receive a paycheck from the state, and it wasn't until the job was eliminated from the budget that that became an adverse action. Which was when? The job was eliminated from the budget in October of 2008. All right, but I thought you give her, you credit her for April 6, 2009 for something that starts things running. Well, we credit her for having filed any claim with the EEOC within the time period after her termination. So if her termination, excuse me, she was not terminated, if the elimination of her job were actionable, she would have, at least at this stage of the proceedings, were saying she would have timely filed. The problem is that the focus of her claim on remand and now before this court has to be about the January 2008 transfer, and no claim is filed within either 180 or 300 days of that adverse employment action. And I think a reasonable employee, and again, you know, every litigant has to exhaust administrative remedies. A reasonable employee would think, I have no work to perform. So you're saying that the June 2009 charge is too late? Yes. The April intake questionnaire is too late. She never exhausted her remedies regarding the 2008 transfer. That's why she's trying to tie it together with the budget cuts of fiscal year 2009. But under this court, the way that the court described it as a lightning rod theory, when you give somebody a lightning rod to hold and send them to the roof, I think they know their job is in danger. And a reasonable employee has to exhaust administrative remedies. And it's telling that even after Ms. McRae's job is eliminated and she does go to the EEOC, she never complains about the January 2008 transfer. In her mind, having, as she alleges in her complaint, her high-profile important job duties, all of those reassigned to a consultant, leaving her with no work to perform, that's not an adverse employment action because she continues to receive a paycheck. But that's not what this court suggested in its opinion. It relied on Crady out of the Seventh Circuit, which held that a material change in the conditions of employment, which can include a material change in responsibilities, leaving the employee with no work to perform, is certainly a material change in the conditions of employment. We didn't rule in the context of exhaustion, did we? It wasn't an issue before this court, Your Honor. That's dictative, then, as to that issue. Yes. Well, in the way that the court described it, and Ms. McRae has never quibbled either in the district court or in this court about how it was described by this court.  But when you look at her allegations before the district court in her amended complaint, they seem to arise out of that. She says that her high-profile important job duties were all reassigned in the beginning of 2008, leaving her with no work to perform for the balance of the year, so that she never went to the EEOC to complain. She didn't have to run there next week and complain. It's not a 60-day exhaustion period. She had 180 or 300 days, if she files with the deferral agency, to go to the EEOC and say, all my job duties have been reassigned. I haven't gotten any new job duties. I haven't been told I'm getting any new job duties. This is a material change in the conditions of my employment. I'm vulnerable. The state's in a fiscal crisis. I'm vulnerable. I think this was discrimination. So, you know, because she failed to exhaust her administrative remedies, as the district court laid out in a lengthy, thorough opinion, the district court lacked jurisdiction over any claim arising from the January 2008 transfer, which is what's left after the legislative immunity bar. What would be her remedy at that point? We're not an ombudsman court. Can we make them give her work? Well, it's not for this court. So there are two congressional purposes. Would the EEOC make them give work? Well, if she gives notice to her employer. So, of course, you know, she alleges that this is a supervisor. She gives notice to her employer, which is more than just one person, more than just one supervisor, that all of her work has been stripped from her. You don't have to give notice to your employer. They're the ones that take it from you. Well, that's one of the twin congressional purposes of the administrative exhaustion requirement. The reason that Congress built in an administrative exhaustion requirement, as this court has explained on numerous occasions, is twofold. The first is to provide notice to the employer of the adverse discriminatory conduct. So you're saying she had to file this thing with the EEOC by July of 2008 while she was still working? Yes. Many people do. I'm just trying to understand what your position is here. If you're transferred, excuse me. She had to file it by then. If you have a transfer, I'm sorry. She has no action when she's fired. She's not making a hostile work environment claim. That's right. And the Supreme Court has said that you don't have a continuing violation theory outside of a hostile work environment claim. Here there was, as she alleges, a discreet act, a discreet adverse act. All of her job duties were taken away. As the Supreme Court has said in Ricks, mere continuation of employment is not enough to prolong the life of the claim. All of her job duties are transferred in January of 2008. She's sitting around on her hands, as she alleges, with no work to perform, and yet she does not complain to the EEOC until the job is eliminated. She's getting paid. That's not enough. Mere continuation of employment is not enough. Just because you're being paid doesn't mean that you haven't suffered an adverse employment action. As this court described it, it's being given a lightning rod and told to go to the roof. If you know you're holding a lightning rod, a reasonable employee understands at that point, I have no work to perform, my job is vulnerable. I think that is the essence of her claim. But those are cases where nothing else happens and you're relying on that solely to be the basis for saving timeliness. But in this case, she's not relying on it because you did terminate her. That's the difference. You're right. What you laid out, counsel, would be absolutely right if what you're saying is that this happened, you said, oh, but it's not adverse, and nothing else happened. Then you're trying to go back to that. You're right, you couldn't be saved, but here you did terminate her. Well, and Rick's is a similar situation. That's a Supreme Court case where a professor is denied tenure and then is given a terminal contract, and at the end of the contract, when he's actually terminated, he goes and files his claim, and he's complaining about the denial of tenure. And the Supreme Court says, you can't bring that claim now. You had to bring that claim within 180 or 300 days of the denial of tenure. It's a similar situation here. She knows she's vulnerable. She has no work to perform. Denial of tenure is totally different. When you're in the academy, that is the piece de resistance, as the French would say. That is the thing. Here it's different. Let me finish. Of course. What I'm saying is that you're right, but you have no work assignments, but you're getting paid. But when a professor is told you don't have tenure, that's seismic in the academic world. That alone, that's why. So that case is in opposite of these facts here. What she's saying is that, okay, I'd like to work, but I am getting paid fully. Maybe they're going to do this forever. But they don't. The lightning strikes. That's a different case. Now, what other case do you have? So, Your Honor, I would say, so there's no case that's just like this one, but there are cases that hold that a material change in conditions where you lose your responsibility. Are you citing cases, or are you just saying in the atmosphere that case is? Well, there's the case that this Court cited, which is Crady, and that was in the Seventh Circuit. I can give you a cite, 993 F. 2nd, 132. That was the case that this Court cited in its initial opinion in this case. In James v. Booz Allen, which is at 368 F. 3rd, 371 and 376, this Court stated in 2004, that a reassignment of duties that will decrease the level of responsibility or have a significant detrimental effect on professional development could be an adverse employment action. In Burlington v. Ellerth, which is 524. Booz Allen, I was on that panel, as you know. Yes. We weren't talking about it in the context of exhaustion. Well, you were talking about it in the context of whether something was an adverse employment action. Well, yeah, that might be the case. We're not talking about whether or not you could fashion. Mr. Morris has decided that's the way his case is being litigated. We're not talking about whether or not that, in fact, could be, but the question is, does it have to be in terms of exhaustion? That's a different question. Well, you have to, no matter what happens in your employment history, an employer could be sneaky and take little pieces of your job away, and then all of a sudden you have no job to perform. And maybe, in that case, if an employer is concealing a cause of action, you'd have an equitable tolling argument. The problem is that you would still have to exhaust your administrative remedies. It still has to be, there's clear law in this circuit, that it still has to be within the scope of your complaint to the EEOC. You have to go, you have to get fired or have your job be terminated or removed from the budget and think, I wonder why I was vulnerable to this budget cut. Could it be that I had no work to perform for the past 10 months and none was assigned to me? Maybe that was the discriminatory act that set me up. I will now go to the Equal Employment Opportunities Commission and say, when my employer took all of my job duties away in January of 2008, I was rendered vulnerable to the budget cuts that eventually came in October 15th of 2008. But Ms. McRae never does that. She never goes to the EEOC. She never puts her employer on notice. She never gives the EEOC the opportunity to investigate. Put her employer on notice of what? That she had no work, that her job duties were taken away from her, either due to the fact that she had a disability or her age. Of what happened in January that you're talking about. Of what happened in January, Your Honor. And so because she never puts the employer on notice through the EEOC process, she never informs the EEOC, then the employer, then she has failed to exhaust her administrative remedies. That's a jurisdictional bar. So even if you could relate the charge back in timing, timing is a different issue than scope. You have the timing of the charge. That's where possibly equitable tolling or a discovery rule could come into play. But then you have the jurisdictional bar, which can't be cured through these equitable doctrines. And that's where Ms. McRae's claim first fails, and that's what the district court held. That merely going and saying, my job was eliminated, does not give the EEOC, does not, through a reasonable investigation. Jurisdictional bar as to what? I'm sorry, I didn't hear you. Jurisdictional bar as to what? A jurisdictional bar as to the civil lawsuit now based on the January 2008 transfer. As to all of these various claims, including the age claim? Yes, every claim arising from the January 2008 transfer. All right, what if we don't buy into that? What about the, is there a doctrine of relation back that you have to deal with to get around the September 20th? The EEOC charge that specified race and disability. Well, that's the statutory time bar. But again, just to close the circle on the administrative exhaustion requirement, if you look at her charges to the EEOC. I said, what if you lose on that? If we lose on that. I'm trying to get to the other thing. Okay, so if we lose on that, she didn't file her claim in a timely fashion with regard to the January 2008 transfer. Are you talking about the lawsuit or the EEOC claim? The EEOC claim. You're back to the first one again. No, there are two different issues. You're talking about the June 29th charge? Yes, but maybe I'm not doing a good enough job explaining. No, I understand. I'm trying to get you to, if you lose on the exhaustion point, then what do you got? If we lose on the jurisdictional bar issue, if we lose on the issue as to whether she put it in her charge, if we lose on that, then there's still, as the district court found, there's a statutory time bar. That's the statute of limitations. That's the statute of limitations. So that's not jurisdictional. The statute of limitations has to be pled properly by you. That has to be. And it has to be valid. Right. And that issue is whether or not she filed her charge with the EEOC within 180 or 300 days of the alleged unlawful employment action. And there's a doctrine of relation back. Well, the EEOC regulations talks about an amendment to the original charge curing technical defects or omissions and that kind of thing. Well, the district court. And alleging additional acts. That would. Related to or growing out of the subject matter of the original charge. Right. That would go toward whether or not when she filed her amended charge and she is now checking off the boxes of sex and race, whether checking off those boxes for sex and race would relate back to when she files her initial charge. The district court said that it shouldn't relate back because it didn't. We don't give a deference to that. But there's another there's another issue as well. The other issue is not just when she checks the race and sex boxes when she files her amended charge. The other issue is, did she file her initial claim within 300 days of the January 2008 transfer? So that that's a different issue. She never. She didn't. Days of the January 2008 transfer. Even if you give her the benefit of the 300 days. And neither nothing would. Neither of these was filed within 300 days. That's right. So that's why Ms. McCray is relying on both the discovery rule and equitable tolling in her brief. The problem with it. But if it's but if it's within 300 days of the October. Does she get it then? She. It's still a timely files with regard to the elimination of her job. But her employers can't be sued. All right. Well, she alleges in this in this June page 50 that she was laid off or fired in October. Right. All right. That's the date you don't want to accept. But if that's the right date, then certainly the first one is timely. As to that, as to the elimination of the second one. I assume Mr. Morris would say relates back under the regulations of the of the EEOC. Let me just there are two issues. The first one is that the first charge is timely as to the elimination of her job. But it's not timely as to the transfer of her duties in January 2008. And that is the premise of her amended complaint. But this was this was the adverse action that harmed her, that made her vulnerable. And so she has to both exhaust she has to exhaust her remedies as to that. And she has to do so timely and she doesn't. She never she does not file her charge within 180 or 300 days of the January 2008 transfer. So she cannot file a lawsuit now based on that bad act. The only time that we can't you we cannot and she cannot use the October date is what you're saying. Correct. Even though that's the date she was fired. That's correct. Because the Supreme Court has said that when you suffer a discreet act of discrimination, the clock starts to run from the date that that act occurred. And that's in Morgan. So, for instance, when you apply for a promotion and don't get it or you're transferred somewhere and you don't like it or you want to be transferred and you're not. Or in this case, all of your job duties are transferred to someone else, leaving you with nothing to do. The clock starts from that time. And you have either 180 or 300 days. Doesn't that continue every day that she doesn't have that work? No. Why not? Because mere continuation of employment is not enough to prolong the life of a claim. And at that point in time, there's no material change. It's not mere. Excuse me. Yes. It's not mere continuation of employment. It's mere. It's continuation of being denied work. That's different. I mean, that's a linguistic argument you're making. It doesn't work. It doesn't change. It's not just mere employment. You're right. But we're not talking about mere employment being the continuation. It's employment under the condition of not having your work. So it's different. Go ahead. Your Honor, that doesn't change the conditions of her employment, though, to not be assigned work that she's never performed. And she never, again, she never exhausts her administrative remedies with regard to that. Excuse me. My time is up, but I'll just, if I can briefly finish. She doesn't exhaust with regard to that either. It's a different supervisor. It's colleagues she's alleging don't share work. So if it's not in her charge, if it's not in here, she can't file a lawsuit based on those claims. I'm sorry I've gone over. Thank you. We ask that you affirm the judgment of the district court. Thank you, counsel. Mr. Morris. I will be brief, and I'll look at the time so I don't go over it at the last time. I'd just like to remind the Court of a couple of things. First is the Alvarado case that's cited in our reply brief, which is the point that Justice Murnahan, Judge Rather, requirement in a hyper-technical fashion. I just want to remind the Court why we're here. We're here because in the district court litigation, for the first time, the employer raised legislative immunity. We're dealing with a charge filed by a lay employee who, at the time, was not seeking to avoid legislative immunity, would not be chargeable for legislative immunity. And the question is, does Title VII in the context of exhaustion of administrative remedies, require a lay employee to anticipate legislative immunity? That's not filed until several years after this event in the district court. The reason we're talking about a January 2008 event is because that defense was presented, which is why I'm suggesting that an appropriate way of dealing with this in the context of dealing with a charge of discrimination is to look at whether, in fact, one, there is a causal link between the two events that a reasonable investigation would have disclosed. And if that is the case, what you have is an employee who knows she got fired, and that's bad, and she filed a claim. An employee who doesn't get work doesn't necessarily know that it is bad unless she can anticipate something bad is going to happen as a result of that. And there's nothing in these facts that suggests that to be the case. There was no change in the work title. There was no change in the pay. She was in the same position she was before the assignment was changed, other than she wouldn't get in the work. But she was getting the pay, and she was still at that level. Yes. To me, as far as she knows, they may have been reserving her for a better assignment later down the road. And she doesn't know that's the case until the lightning strikes. And I guess the point here is, again, going back to Judge Murnahan. We're lawyers here trying to argue technicalities that have no meaning to a lay employee. She said what she knew. What she knew was she was fired. And, Judge King, I think you've seen on page 45 of the joint appendix the intake questionnaire that makes, again, reference. That was in April. In April of 2009, which makes reference to. . . You say that's the proper date for everything to start, the intake questionnaire? Yes, because in the intake questionnaire, it notes that her position was eliminated by HR in October 2008. So she puts at least the agency on notice at that time. The charge is a document that's ultimately prepared by the investigator. So what you have in the document on page 45 of the joint appendix is evidence of when she went to the EOC to start this process. How do you get around the fact that she didn't allege race discrimination or one other kind she didn't allege until later, outside of 300 days? And my point was. . . And how do you get around our evidence case that I think says we don't really have a discovery rule there? Well, I would be arguing that the suggestion from the authority that I cite, both from the Ricks case as well as suggestions in Morgan itself, that discovery rule is a matter that the Supreme Court would ultimately be. . . has never foreclosed and was open to. Well, it hasn't foreclosed it, but we got a case. In fact, Ed Evans' case seems to say that we. . . that a cause of action accrues when unlawful employment action occurs, not when the plaintiff first suspects discrimination that motivated it. If that's the law, it hurts you, I think. Well, I think my point is I don't know that that was made in the context of the exhaustion. Well, I miss. . . there's a Hamilton case, too, that seems to cause problems there, too. But anyway, that's. . . But that's my position, which is that she didn't. . . she did what she knew. And the question is, does Title VII require an aggrieving employee to do more? I think if it does, if the interpretation is that it does, that interpretation runs beyond the policy implications of the statute. Thank you, Your Honor. And as I leave, I would be asking that the matter be reversed and remanded for further proceedings in the district court. Thank you. Thank you, counsel. We're allowed here by both counsel. We'll come down and greet counsel and proceed to the next case. Thank you.
judges: Roger L. Gregory, Robert B. King, G. Steven Agee